IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03185-KAS

A.R.L.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court[2] on the **Social Security Administrative Record** [#6], filed February 1, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On March 13, 2023, Plaintiff filed an Opening Brief [#8] (the "Brief"). Defendant filed a Response [#12] in opposition, and Plaintiff filed a Reply [#13]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#7, #14, #16]; *Reassignment* [#15].

## I. Background

On February 13, 2020, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning June 16, 2017. Tr. 15.[3] On May 27, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 41.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2021, and that she had not engaged in substantial gainful activity ("SGA") since June 16, 2017, the alleged onset date. Tr. 18. The ALJ then found that Plaintiff suffers from seven severe impairments: (1) degenerative disc disease of the cervical spine, (2) obesity, (3) fibromyalgia, (4) nonepileptic seizure disorder, (5) migraines, (6) depression, and (7) conversion/somatoform disorder. Tr. 18. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." Tr. 19.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work"[4] with the following limitations:

> [S]he could occasionally climb ramps and stairs. She could not climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She needed to avoid extreme heat and noisy industrial environments, working best in a moderate or office noise level setting, and with the avoidance of unprotected heights and dangerous moving machinery. She must have been allowed the use of sunglasses as needed for bright lighting. She could understand, remember, and carry out simple instructions that could be learned in thirty days or less and could sustain

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 6 through 6-8, by the sequential transcript numbers instead of the separate docket numbers.

[4] "Sedentary work" is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

concentration, persistence, and pace to these simple instructions for two-hour intervals with normal breaks. She could have occasional interactions with coworkers, supervisors, and the general public and could adapt to simple workplace changes.

Tr. 25. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform any of her past relevant work. Tr. 39. However, the ALJ found that there were jobs which Plaintiff could perform which existed in significant numbers in the national economy, including the representative occupations of final assembler, table worker, and touch up screener. Tr. 40. The ALJ therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 40-41. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The existence of a qualifying disabling impairment must be demonstrated by "medically

3

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks, citation, and modification omitted).

**A.     The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers,

5

at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be made on the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the Court will not reverse if it finds the ALJ's error to be harmless.[5] *See Allen*, 357 F.3d at 1145 ("We have generally recognized the applicability of [the harmless error] principle in the administrative review setting. Further, we have specifically applied it in social security disability cases, though not always by name and without settling on a definitive characterization of its precise contours

---

[5] "A legal error is harmless if, when following the correct analysis, no reasonable fact finder could determine a different conclusion." *Poole v. Berryhill*, No. 17-cv-02398-MEH, 2018 WL 3323165, at *8 (D. Colo. July 6, 2018) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005)).

and range of application in this somewhat unique, nonadversarial setting.") (citations omitted).

### III. Analysis

Plaintiff argues that the ALJ's conclusion that Plaintiff does not require a rollator walker as part of Plaintiff's RFC is not supported by substantial evidence. *Brief* [#8] at 3. She argues that the ALJ improperly discounted Plaintiff's somatoform disorder symptoms, including but not limited to her need for a rollator walker, based on objective medical evidence findings. *Id*. She also argues that the ALJ improperly failed to bear in mind that Plaintiff has longstanding conversion/somatoform disorder, in which the objective medical evidence is not indicative of the true extent of a person's limitations. *Id.*

**A.     Use of a Rollator Walker**

Defendants argue that, even assuming the ALJ's failure to include the need for a rollator walker were an error, such error was harmless because "there remained a significant number of jobs nationally that Plaintiff could have performed." *Response* [#12] at 11-12. Plaintiff does not directly grapple with this argument in her Reply [#13]. For the reasons set forth below, the Court agrees with Defendant's argument.

At a hearing held on Plaintiff's claim on January 11, 2022, the VE testified that a person with Plaintiff's vocational profile and assessed workplace limitations could perform the following representative sedentary jobs: (1) final assembler, with 50,000 jobs in the national economy; (2) table worker, with 35,000 jobs in the national economy; and (3) screener, with 55,000 positions in the national economy. Tr. 48, 64-66. The VE further testified that, should the person additionally require a walker to ambulate and balance, those same three representative jobs would be available, but the number of jobs in the

7

national economy would be cut in half for each one. Tr. 66. Thus, there would be about 25,000 final assembler jobs, 17,500 table worker jobs, and 27,500 screener jobs, for a total of 70,000 in the national economy.

The Tenth Circuit Court of Appeals has applied the harmless error doctrine to situations where an ALJ erroneously included certain jobs but where the remaining jobs, for which there was no error, existed in sufficiently significant numbers in the national economy. *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008); *see also Lueras v. Comm'r, SSA*, No. 21-2043, 2022 WL 244142, at *3 (10th Cir. Jan. 27, 2022) (holding that the ALJ's failure to include a specific limitation in the RFC was harmless error where the record was clear that there remained work existing in significant numbers in the national economy, should that limitation have been included). Both the Tenth Circuit and District Courts have repeatedly held or indirectly indicated that numbers similar to or smaller than 70,000 in the national economy meet the "significant numbers" threshold. *See, e.g.*, *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (24,900 jobs in the national economy); *Rogers v. Astrue*, 312 F. App'x 138, 140, 142 (10th Cir. 2009) (11,000 in the national economy); *M.L.S. v. Comm'r, SSA*, No. 1:22-cv-00319-SKC, 2023 WL 7551561, at *5 (D. Colo. Nov. 14, 2023) (76,700 jobs in the national economy); *Calvin v. Kijakazi*, No. CIV-21-1046-SM, 2022 WL 3268745, at *4 (W.D. Okla. Aug. 10, 2022) (27,000 jobs in the national economy); *Gabriel v. Kijakazi*, No. CIV-21-1121-STE, 2022 WL 3925373, at *5 (W.D. Okla. Aug. 30, 2022) (72,830 jobs in the national economy); *Harrison v. Saul*, No. 19-1202-KHV, 2020 WL 1847735, at *6 (D. Kan. Apr. 13, 2020) (45,000 jobs in the national economy); *Jackson v. Colvin*, No. 13-cv-01927-KLM, 2014

WL 5504755, at *9 (D. Colo. Oct. 31, 2014) (collecting cases to hold that 26,000 jobs in the national economy met the threshold).

Because 70,000 jobs in the national economy constitutes a significant number, the Court finds that any potential error by the ALJ in failing to include a rollator walker limitation in the RFC was harmless. *See Poole v. Berryhill*, No. 17-cv-02398-MEH, 2018 WL 3323165, at *8 (D. Colo. July 6, 2018).

**B.     Discussion of Symptoms**

Plaintiff's Brief [#8] focuses almost exclusively on the rollator walker issue, but she also briefly takes issue with the ALJ's discussion of other somatoform disorder symptoms, specifically those of chronic fatigue, memory deficits, and pseudo-seizures. *See Brief* [#8] at 13-14. Given the brief mention of this issue, the Commissioner did not address it in the Response [#12]. *See Response* [#12] at 1 ("Plaintiff challenges a single finding made by the ALJ in denying Plaintiff's application for disability insurance benefits: that she did not require use of a walker in the workplace."). In her Reply [#13], however, Plaintiff leans into this argument. Nevertheless, for the reasons stated below, the Court finds that this argument is insufficient to warrant remand.

Plaintiff asserts that the ALJ improperly discounted Plaintiff's symptoms relating to conversion/somatoform disorder because of a lack of sufficient objective evidence in the medical record to support her subjective reports. *Reply* [#13] at 4-5. In support, Plaintiff cites *Harris-Jackson v. Astrue*, No. 11-1411-JWL, 2013 WL 27640 (D. Kan. Jan. 2, 2013), *Jackson-Farnsworth v. Colvin*, No. 12-2516-JWL, 2014 WL 1260122 (D. Kan. Mar. 27, 2014), and *Marla P. v. Kijakazi*, No. 21-1095-JWL, 2022 WL 2191792 (D. Kan. June 17, 2022). *Id.* at 3-5; *Brief* [#8] at 10-11, 13-14. In those cases, the courts emphasized that

the ALJ could not simply rely on objective medical evidence to discount the plaintiff's allegations of disabling symptoms because, in conversion/somatoform disorder cases, there may be no objective medical evidence supporting the symptoms caused by the disorder. *See Harris-Jackson*, 2013 WL 27640, at *9 ("It is mostly irrelevant that the objective medical evidence does not support Plaintiff's symptoms."); *Marla P.*, 2022 WL 2191792, at *5 ("Most importantly, the court notes that because the evidence in this case contains objective medical evidence suggestive of conversion disorder, the ALJ found a severe conversion disorder and discussed that evidence but he did not rely on the objective medical evidence to discount Plaintiff's allegations of disabling symptoms.") (internal citation omitted); *Jackson-Farnsworth*, 2014 WL 1260122, at *8 ("The primary feature of a somatoform disorder, including conversion disorder, is the presence of *physical symptoms* that suggest a general medical condition but are not explained by that condition, by substance use or abuse, or by another mental disorder.") (emphasis in original).

However, the Court does not read the ALJ's decision so narrowly as Plaintiff. Plaintiff focuses on two back-to-back sentences in the ALJ's long explanatory paragraph near the end of the RFC analysis. *Brief* [#8] at 14 (citing Tr. 38). Those sentences state:

> [T]he claimant has a conversion/somatoform disorder diagnosis, and such disorder can result in significant physical dysfunction. However, the record here does not demonstrate sufficient objective evidence supporting the claimant's reports of continued symptoms and does not support that the claimant is as restricted as alleged.

Tr. 38. In the full context of this long, run-on paragraph, however, the Court finds that the second sentence does not directly apply to the first. The beginning of the paragraph finds the ALJ discussing the entire of Plaintiff's deficits and limitations. Tr. 38. For example, in

the sentence immediately prior to the mention of conversion, the ALJ states: "There are some deficits and limitations noted in the record, including, findings of some memory and concentration deficits, limited social interaction, some limitations in adapting and managing herself, gait abnormalities, and some tightness and tenderness and pain with range of motion." Tr. 38. Immediately after the sentence mentioning objective evidence, the ALJ dives into a discussion about imaging, electrodiagnostic evidence, use of the walker, various comments about physical and mental findings, and treatment and treatment recommendations. Tr. 38. Only then does the ALJ return to the conversion issue, stating:

> A psychogenic component, conversion disorder, or functional disorder, were noted to likely be the cause of at least some of the claimant's symptoms. However, the claimant's mental health treatment was minimal and focused on depression. Her depression was also noted to be only mild.

Tr. 38. The ALJ then concluded:

> Thus, on balance, the reduction to sedentary exertion, with no climbing and occasional postural limitations, limitations on temperature, noise level, and hazards, use of sunglasses as needed, and limitations related to simple work and social interaction, account for the positive examination findings, the changes noted on imaging, *the effects of claimant's somatoform/conversion disorder*, and her *reported* symptoms and functional limitations, such as, dizziness, balance issues, gait disturbance, *seizure-type activity*, migraines, paresthesias, and other nerve issues, weakness, obesity, limited mobility, chronic pain, *fatigue*, *memory and concentration problems*, and depression.

Tr. 38 (emphases added). In addition, the ALJ explicitly noted that "the limitations in the above [RFC] account for the effects of the claimant's somatoform/conversion disorder, *despite a lack of substantial objective support*." Tr. 36. (emphasis added).

Reading the opinion as a whole, the Court finds that it cannot be reasonably read as the ALJ having discounted Plaintiff's symptoms associated with

11

somatoform/conversion disorder solely because there was not objective medical evidence to support the existence of those symptoms. The ALJ repeatedly discussed those symptoms throughout her decision and explicitly noted her inclusion of related limitations even in the absence of objective support for them. Accordingly, the Court finds that the ALJ did not commit reversible error in connection with Plaintiff's symptoms relating to conversion/somatoform disorder.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Commissioner's decision that Plaintiff is not disabled is **AFFIRMED**. Each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated: March 31, 2024                              BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge